GREEN J.
delivered the opinion of the court. *
. The first question presented for discussion is, whether in any form of proceeding the complainants are entitled to recover. It is contended for the corporation that the true construction of these covenants gives to Avery, or those claiming under him, no remedy to recover any part of the cost of erecting the water works, because the buildings attached to the water works were destroyed by fire in 1830, which was a contingency not in the minds of the parties when the contract was made, and was not provided for in the covenant. The words of this part of the covenant are, “And they further contract, that if at any time after the completion of said works, the same shall get out of repair, and so remain for the space of ninety days, so that the' town is not supplied with water, as herein provided, then the mayor and aldermen, for the time being, may take possession of said works in behalf of the corporation, and use and occupy the same as their own, and shall only in such case be liable to pay to Avery and Ward, the one half of the amount by them expended in the construction thereof, over and above the five thousand dollars advanced, as before stated.” It is argued that the water works were destroyed by fire, and that the defendants could not take possession of them, which they must have done, in order to give Avery and Ward a right of action. This argument is wholly gratuitous, and is founded upon the supposition of facts not stated in the bill. Upon this subject the bill alleges, that about the 9th of March, 1830, the buildings attached to the said works and the said saw mill were destroyed accidentally by fire, and the machinery of the establishment, upon which the supplies of water depended, were thereby rendered useless.” It is subsequently alleged, that the mayor and aldermen had taken possession of the lot of land on which the water works were erected, having dispossessed the tenants in possession, by action of ejectment. The statement of the bill is, that the houses and saw mill were destroyed, and the machinery thereby rendered useless. This machinery was not destroyed, but remained upon the lot unrepaired, and when the defendant took pos *184 sess¡on of the lot, possession of the machinery was obtained °i” every thing else appertaining to the water works, which was not destroyed. It would be too absurd for the defendant to contend, that had a single article of machinery, which was necessary to-the complete operation of the works, been destroyed, and had remained unrepaired for ninety days and it had then taken possession, as it has done in this case, it would not have been a possession of the water works, within the meaning of this covenant. But it would he no-cessary so to contend, in order to maintain the position assumed. The water works did not consist only of the house which was desttoyed. The house, the engine, and the machinery for working it, the reservoir, the pipes, the hydrants were but parts of the entire thing, denominated water works. If one hydrant had been knocked down and destroyed, or a pipe for conducting the water had been removed, the water works would have been out of repair. There is no semblance of propriety, therefore, in contending that the destruction of the house was a destruction of the water works, and that consequently the defendant did not take possession of them.
The water works were finished and in full operation, according to the terms of the second contract. The buildings attached to the said works were destroyed by fire, and the works were thereby out of repair., and so remained for more than ninety days, and the mayor and aldermen took possession of the works in behalf of the corporation, and consequently became liable to pay the half of the amount they cost, over and above the five thousand dollars, which had been advanced by it to Avery and Ward.
The statement of the facts of the case in connexion with the terms of the contract, would seem to present a case too plain for debate; nor are there any extrinsic facts which should induce a construction different from that which the face of the covenant would indicate.
The next inquiry is, has a court of chancery jurisdiction cf the case? The first ground upon which its jurisdiction is sought to be supported, is that of account. It is true, account is a head of equity jurisdiction, hut it is so only in *185 cases where there are mutual accounts, and not where the items are all on one side. 1 Story's Equity, § 458, 459: Ves. 687, 688. Here the items are all on one side, and consequently the jurisdiction cannot be supported on that ground. It is true, where proof of the items is to be had only from the defendant, and a discovery is sought and obtained, in such case, equity having possession of the cause for that purpose, will retain if and give full relief. 1 Storey’s Eq. 458. In this bill there is no discovery asked for, and therefore jurisdiction cannot attach on that ground. There are however cases, where the remedy being embarrassed at law, and full relief cannot be afforded there, equity will take jurisdiction. 1 Story’s Eq. § 457. But so far as the question upon the subject of account is presented, wé perceive no other difficulties in this case than must exist in every case where there are many items to be proved.
But in another point of view, we think there would be much difficulty and embarrassment in prosecuting this claim at law, even if relief could at all be administered there. In the first place, as Avery and Ward did not finish the works by the time stipulated in the covenant, they could not maintain an action on that coveiant alone, because they could not aver a performance on their part, nor could the subsequent contract with Avery, by which the non-performance of the first was waived, be relied on by them to excuse an averment of performance. That contract was not made for them, nor for their benefit. It was made with Avery alone, as an individual, and for his individual benefit. An action upon the first covenant could not be sustained by Avery alone, because it was made jointly with him and Ward. He could not couple the agreement which was made with him alone with the first covenant and sue in his own name; for although Ward relinquished his interest in that agreement to Avery, that only vested in him an equity in the covenant, and not a legal right to sue in his own name. * A suit by Avery on the second covenant would be unavailing, because it contains no stipulation to pay the monies expended in the works. Upon the whole, whether these views would have been taken and enforced, had the remedy been sought in a court of law or not, *186 still it cannot but be perceived that much difficulty and embarrassment would have attended an attempt to enforce these agreements at law; and that the remedy would not only have been embarrassed, but inadequate; and this of itself is a ground of equity jurisdiction. Besides this view of the case, it is clear, that if suits could have been sustained at law, two suits would have been necessary, and equity interposes its jurisdiction to prevent a multiplicity of suits. 1 Story’s Eq. § 438, 457. Let the decree of the chancellor be reversed, the demurrer of the defendant overruled, and the cause will be remanded to the chancery court for answer and further proceedings.
Decree reversed.